IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 13 |
| KIMBERLY ANN ELLISON | Case No. 23-40438 |
| Debtor(s). | |

**OPINION**

This matter is before the Court on the Objection to Confirmation of Second Amended Plan filed by creditor AmeriCredit Financial Services, Inc. d/b/a GM Financial.[1]  This case presents the issue of whether a  debtor's Chapter 13 Plan must provide for post-discharge retention of a secured creditor's lien where the debtor's plan does not provide for payment of the creditor's claim in full and the plan of a separately filing co-borrower provides for "surrender" of the collateral.

**FACTS**

The facts of this case are not in dispute.  On February 5, 2022, Debtor Kimberly Ann Ellison ("Debtor") and another individual, Daniel D. Schmidt (Co-Borrower) executed a Retail Installment Contract and Security Agreement ("Contract") with Expressway Dodge Chrysler Jeep Ram for the purchase of a 2021 Jeep Cherokee ("Vehicle.").[2]  Pursuant to the terms of the Contract, the Debtor and Co-Borrower financed $40,823.50 and agreed to pay interest at an annual percentage rate of 15.50%.  The Contract provides for payments of $856.65 per month for 75 months. The Contract was subsequently assigned to creditor AmeriCredit Financial Services, Inc. ("Creditor").  The Certificate of Title lists both the Debtor and Co-Borrower as owners of

---

[1] The issue raised in this case was originally taken under advisement on February 14, 2024 on Creditor's Objection to Confirmation.  That objection was mooted, however, by the filing of a First Amended Plan on May 14, 2024.
[2] The relationship between the Debtor and Co-Debtor was not disclosed.  However, the Court assumes that they are not married, as the Debtor's Schedule J indicates that she is single.

1

the Vehicle and Creditor is named as the lienholder. *See* Claim of AmeriCredit Financial Services, Claim 1-1 (Claim 1-1).

On October 17, 2022, the Co-Borrower filed a Chapter 13 Petition (Case No. 22-40393). His Second Amended Plan, which was confirmed on January 23, 2023, provides for surrender of the Vehicle. Further, pursuant to Paragraph 4C of the Plan, both the automatic stay under § 362(a) and the co-debtor stay under § 1301 terminated upon confirmation.

The Debtor filed the instant Chapter 13 Petition on November 7, 2023. She indicated on Schedule A/B that the Vehicle was jointly owned with Co-Borrower and listed the current value of the Vehicle as $32,175.00. Debtor listed Creditor on Schedule D as a secured creditor holding a $36,635.00 claim. Concurrently, the Debtor filed a Chapter 13 Plan which proposed to pay Creditor as a wholly secured "910-Claimant" to the extent of $36,635.00 at 6.0% interest. This amount, however, was less than the amount claimed by Creditor, which was $36,940.57 payable at the 15.50% contract rate of interest. *See* Proof of Claim 1-1.

Creditor filed its initial Objection to Confirmation of Debtor's Plan on November 14, 2023. It objected to the Plan for numerous reasons, including that the proposed interest rate was insufficient, that the Plan was not feasible, and that the Plan was devoid of language addressing retention of Creditor's lien given that the debt was a co-signed obligation. Specifically, Creditor requested that the Debtor be ordered to include language in the "non-standard provisions" section of the Plan providing that Creditor would retain its lien until payment of the underlying debt as determined by non-bankruptcy law.

The Court conducted a hearing on Creditor's objection to the original plan on February 14, 2024. At that time, Creditor's counsel represented that the primary issue between the parties was whether Debtor was required to provide for retention of Creditor's lien in her plan. After

hearing very brief arguments on the issue, the Court directed the parties to submit briefs on the issue. Creditor was directed to file its brief within thirty (30) days, with the Debtor being granted fifteen (15) days thereafter in which to respond. Although Creditor filed its brief on March 12, 2024, nothing was filed by the Debtor.

On May 14, 2024, the Debtor filed an Amended Plan, which mooted Creditor's objection to the original Plan. While the Amended Plan increased the amount of Creditor's claim to $36,940.57 and the proposed interest rate from 6.0% to 9.0%, it did not provide for retention of Creditor's lien. Creditor objected to the Amended Plan, again asserting that proposed interest rate was insufficient and that the Amended Plan needed to address its lien. Before the Court could conduct a hearing on Creditor's objection, on June 13, 2024, the Debtor filed the instant Second Amended Plan. Creditor filed its objection to the Second Amended Plan on July 2, 2024. The sole issue raised by Creditor is that the Second Amended Plan fails to provide for retention of Creditor's lien until payment of the underlying debt in full under non-bankruptcy law. At no time has the Debtor filed a brief as previously ordered or articulated her position in any meaningful way.[3]

## DISCUSSION

The requirements for Chapter 13 Plan confirmation are set forth in 11 U.S.C. § 1325(a). Pursuant to 11 U.S.C. § 1325(a)(5)(B), the court shall confirm a plan over the objection of a secured creditor if the Plan provides for retention of the creditor's lien securing the claim until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C. § 1328, and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such

---

[3] Debtor and Creditor were ordered to file briefs at the hearing on February 14, 2024.

3

claim…" 11 U.S.C. § 1325(a)(5)(B).  The parties have resolved their dispute regarding the sufficiency of the Debtor's payments, leaving only the issue of lien retention.

Consistent with the provisions of 11 U.S.C. § 1325(a)(5)(B)(i), the standard Chapter 13 Plan for this District provides:

> With respect to each allowed secured claim to be paid in full through the Plan, other than mortgage or long-term debts, the holder of such claim shall retain the lien securing its claim until the earlier of (i) the payment of the underlying debt determined under non-bankruptcy law; or (ii) entry of the discharge order under 11 U.S.C. § 1328.

Chapter 13 Plan and Notice of Time to Object, ¶ 12 (Doc. 49).  Although not clearly articulated at hearing, the Debtor appears to rely on § 1325(a)(5)(B) and this Plan provision to support her position that, assuming all requisite payments are made under the Plan, Creditor's lien must be extinguished upon entry of a discharge.  If Debtor was the only obligor under the Contract, this assertion would be correct.  Unfortunately for the Debtor, however, § 1325(a)(5)(B) is not the only section of the Bankruptcy Code relevant to this analysis.

In the instant case, the Vehicle is only partially owned by the Debtor. Co-Borrower Daniel Schmidt also has an interest in the vehicle and, like the Debtor, is obligated on the loan to Creditor.  When a debtor files a Chapter 13 petition, the Bankruptcy Code imposes a codebtor stay protecting the co-obligor from collection efforts.  11 U.S.C. § 1301(a).  This stay may be lifted to "the extent that . . . the plan filed by the debtor proposes not to pay such claim…" 11 U.S.C. § 1301(c)(2).  As the court explained in *In re Jackson*, 2012 WL 6623497 (Bankr. M.D. Ga., Dec. 18, 2012);

> The reference in § 1301(c)(2) is to the 'claim' generally, not to the 'allowed claim.  The distinction is important.  Under 11 U.S.C. § 502(b)(2), an 'allowed claim' may exclude unmatured interest.  By contrast, under § 101(5)(A), a 'claim' includes any right to payment, including unmatured interest at the contract rate.  Because § 1301(c) refers to a 'claim' rather than an 'allowed claim,' the Court

4

> may lift the codebtor stay to allow a creditor to collect any contract interest not provided for in the plan.

*Id*. at *2 (internal citations omitted).  In this case, the Debtor's plan does not provide for payment of Creditor's claim in full.  Ordinarily, Creditor would be entitled to collect the difference between the contract interest rate and the interest rate provided for in the plan from the Co-Borrower personally.  However, in this case the Co-Borrower is the debtor in his own separate Chapter 13 bankruptcy.  Therefore, Creditor is foreclosed from proceeding against Co-Borrower personally absent dismissal of the Co-Borrower's case or obtaining relief from the co-debtor stay.

Because of these limitations on Creditor's collection ability, it seeks to protect the unpaid interest owed by retaining its lien on the Vehicle after the Debtor's discharge.  In support of its position, Creditor points to § 524 of the Bankruptcy Code which provides, in pertinent part:

> (a) A discharge in a case under this title—
>
>    (1)  voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . § 1328 of this title . . . ; [and]
>
>    (2)  operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset such debt as a personal liability of the debtor . . . .
>
> (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt.

11 U.S.C. §§ 524(a), (e).  This section makes clear that the protections of the discharge injunction extend solely to the individual debtor.  As the court explained in *In re Coffey*, 637 B.R. 879 (Bankr. N.D. Ala. 2022):

> While the discharge injunction is an 'expansive provision that is sensitive to the diversity of ways a creditor might seek to collect a discharged debt,' *Green Point Credit, LLC v. McLean (In re McLean*, 794 F.3d 1313, 1321 (11th Cir. 2015) . . .

> 'the purpose of section 524 . . . is to protect the debtor and not to shield third parties. . .who may be liable on behalf of a debtor.' *Owasski v. Jet Florida Systems, Inc.,* 883 F.2d 970, 973 (11th Cir. 1989). Indeed, the plain language of § 524(e) provides that 'discharge of a debt of the debtor does not affect the liability of any other entity on, or the *property of any other entity for*, such debt.' 11 U.S.C. § 524(e) (emphasis added). Thus, . . . courts have held that the discharge injunction does not prevent a creditor from taking action against a non-filing codebtor to collect a debt once the Chapter 13 case is closed or dismissed pursuant to the plain language of § 524(e).

*Id.* at 885.

This interpretation of § 524 was followed by the United States Bankruptcy Court for the Central District of Illinois in *Faulkner v. CEFCU (In re Faulkner),* 2013 WL 2154790 (Bankr. C.D. Ill., May 17, 2013). In that case, the court ruled that a lien release provision in a Chapter 13 can only release a lien as to the debtor's interest in the collateral. In that case, the debtor and a third party jointly purchased a vehicle. The debtor subsequently filed bankruptcy, and her Chapter 13 plan provided for bifurcation of the lienholder CEFCU'S claim, paying the claim as secured to the extent of the value of the collateral with the remaining balance as unsecured. The plan also provided that "secured creditors shall retain their liens. . . until they have been paid the value of said property. . . . *Id.* at *3. The debtor completed her payments and obtained a discharge. Despite this, however, the creditor refused to release its lien due to the fact that there was a non-filing co-debtor on the loan. Debtor then brought an adversary against creditor for an alleged violation of the discharge injunction. While the *Faulkner* court acknowledged that the creditor was bound by the terms of the confirmed plan as to the lien on the *debtor's* interest in the vehicle, the debtor could not require release of the lien as to the co-debtor's interest. *Id.* at *5. Relying on the express language of § 524(e), the court explained:

> [T]he lien release provision in the Debtor's plan, no matter how clear and conspicuous, can only serve to release CEFCU's lien as to the Debtor's interest in the vehicle. Any collection activity by CEFCU directed at the Debtor would clearly violate the discharge injunction because the Debtor, once receiving her

>   discharge, is no longer personally liable to CEFCU for any remaining deficiency balance.  However, CEFCU's lien remains in place and can be enforced against the non-filing co-debtor's interest in the vehicle until such time as CEFCU receives full payment of its claim at the contract rate [of interest].

*Id.* at *5 (internal citations omitted).

In reaching its conclusion, the *Faulkner* court relied heavily on the reasoning of the court in *In re Jackson*, 2012 WL 6623497 (Bankr. M.D. Ga., December 18, 2012), which is factually similar to the case at bar.   In the *Jackson* case, Charles Jackson and his mother, Cheryl Brown, jointly purchased a 2002 Pontiac Grand Prix on February 1, 2010.  The sales contract provided for an annual interest rate of 28%.  On May 17, 2012 *(i.e.,* within 910 days of the purchase of the vehicle), Ms. Brown filed a Chapter 13 Petition.  Her confirmed plan provided for neither payment for nor surrender of the vehicle, but instead stated that the lienholder would be paid by her co-signer son, who was the one who drove the vehicle.  The creditor did not file a proof of claim in Ms. Brown's case, but it did obtain both relief from the stay and from the co-debtor stay in that case.  *Id.* at *1.

Approximately one week after Ms. Brown filed her bankruptcy petition, debtor Charles Jackson also sought Chapter 13 relief.  Creditor filed a proof of claim in the amount of $4,597.88, which included $2,467.88 in principal, $1,400 for repairs, and $730.00 in attorney's fees.  Debtor's plan identified creditor's claim as a "910 claim" and proposed to pay creditor its secured claim at 5% interest.   The plan also included a provision stating that "all holders of liens other than long term debt . . . shall cancel said liens within 15 days following notification of the debtor(s) discharge."  Creditor objected to confirmation for several reasons, including that the lien release provision of the plan

7

was inapplicable to its claim because it was not being paid in full. Specifically, creditor argued that because the debtor's plan did not provide for payment of its claim at the contract rate of interest, it was entitled to recover the difference between the contract rate of interest (28%) and the interest being paid by the debtor in his plan (5%) from co-debtor Ms. Brown before releasing its lien. *Id.*

The *Jackson* court sustained the creditor's objection and ruled that although the debtor's plan could be confirmed as proposed, the lien release provision in the plan was *only* applicable to the debtor's interest in the vehicle. Thus, creditor was entitled to retain its lien against the co-borrower's interest in the property until such time as its claim was paid in full at the contract rate of interest. *Id.* In reaching this conclusion, the court examined the confirmation requirements of § 1325 and concluded that permitting debtor to extinguish creditor's lien upon discharge would allow the co-debtor to "receive the benefit of lien release as to her interest in the vehicle without complying with § 1325(a)(5) to obtain such release," a result that would be "inequitable and inconsistent with the Bankruptcy Code." *Id.* at *3.

Similar reasoning was employed by the court in *In re Pierre*, 468 B.R. 419 (Bankr. M.D. Fla. 2012), which was discussed at length by the *Jackson* court. Although factually distinguishable from both *Jackson* and the instant case, the *Pierre* analysis is instructive. There, debtor Senayda Pierre and her husband initially filed a joint Chapter 7 case, in which they expressed an intention to surrender certain investment real property that was held as tenants by the entireties. Although the Pierres each obtained a Chapter 7 discharge, the real property at issue was never surrendered. Thereafter, Mrs. Pierre obtained a revocation of her discharge and filed a Chapter 13 case in which she proposed

8

to retain the property and strip-down the undersecured mortgage, all while her husband retained his Chapter 7 discharge.

The court rejected the debtor's "strip-down" proposal based primarily on the fact that ownership of the property was held by the tenants by the entirety. It concluded that in order to strip a lien on property held in such manner, both co-owners of the property must be joint debtors in the bankruptcy case and both be eligible to receive a Chapter 13 discharge. *Id.* at 428.  It went on to say that it believed allowing one co-owner to unilaterally strip liens would "result in other types of mischief that could affect the integrity of the bankruptcy process . . . ." *Id.*   It explained as follows:

> Here, Mr. Pierre has discharged his personal liability to CitiMortgage in his Chapter 7 case. Yet, rather than truly surrendering his interest in the Property, which is the normal result when one surrenders their interest in a Chapter 7 case, his [co-owner], Mrs. Pierre, is attempting to retain the property in [her] Chapter 13 case but substantially reduce or eliminate the amount of the secured claim. This places the secured creditor CitiMortgage in an untenable and unfair predicament.  CitiMortgage cannot foreclose on the property hollowly surrendered in Mr. Pierre's Chapter 7 case, due to Mrs. Pierre's Chapter 13 case, nor can CitiMortgage sue Mr. Pierre for any deficiency judgment due.  For all purposes, Mr. Pierre is receiving the full benefit of his wife's Chapter 13 discharge, even though he is not entitled to the benefits.

*Id.*

After analyzing the relevant authority, the Court finds the reasoning of *Faulkner, Jackson,* and *Pierre* persuasive and concludes that Creditor is entitled to retain is lien on Co-Debtor Daniel Schmidt's interest in the Vehicle until such time as its claim is paid in full. Admittedly, unlike *Pierre*, there is no indication that the Debtor and Co-Debtor in this case are attempting to abuse the bankruptcy system.  Nonetheless, the interplay of their respective Chapter 13 Plans places Creditor in a similarly unjust "trick box."  Despite its claim not being paid in full in the Debtor's Chapter 13 Plan, Creditor is prevented from recovering from the Co-

Debtor personally due to his individual bankruptcy and is foreclosed from proceeding against the property *in rem* due to the Debtor's bankruptcy.  Extinguishing Creditor's lien upon entry of Co-Debtor's discharge would not only deprive Creditor of the benefit of its bargain in having a co-obligor, but would also bestow on Mr. Schmidt the benefit of a lien release as to his interest in the Vehicle without having to comply with 11 U.S.C. § 1325(a)(5).

Interestingly, it was the Debtor who asserted at hearing that permitting Creditor to retain its lien on the vehicle after Co-Borrower's discharge would be somehow "unfair.[4]"  This position, however, not only ignores §§ 1325(a)(5) and 524(e), but also demonstrates a lack of understanding of what a "surrender" of collateral entails.  "Surrender" pursuant to 11 U.S.C. § 1325(a)(5)(C) is "a procedural device which permits the secured creditor to pursue its state law remedies with regard to the property surrendered."  *In re Loucks*, 619 B.R. 908, 909 (Bankr. E.D. Mich. 2020).  It does not, in and of itself, affect the debtor's substantive rights in the property surrendered.  *Id.*  Rather, it merely establishes that Debtor will not oppose the transfer of the secured creditor's collateral. *Maple Forest Condo. Assoc. v. Spencer (In re Spencer)*, 457 B.R. 601, 612 (Bankr. E.D. Mich. 2011).  Absent some further action by the creditor, such as foreclosure or repossession and sale, surrender does not divest a debtor of his or her ownership interest and its attendant obligations.  *Id.*

In the instant case, although the Co-Debtor's confirmed Plan provides that he will "surrender" the Vehicle to Creditor, in actuality, this provision is wholly illusory.  Despite the language of the Plan, Creditor is prohibited from enforcing its state law rights against the collateral at this time due to the Debtor's bankruptcy.  If the Court were to require Creditor to release its lien upon entry of Co-Debtor's discharge, the Co-Debtor would be entitled to retain an

---

[4] Debtor did not elaborate on this position at hearing and, because Debtor's counsel failed to file a brief, the Court is left to guess as to what Debtor finds "unfair" about Creditor's position.

ownership interest in the Vehicle without having to pay Creditor's claim in full or actually complying with § 1325(a)(5)(C). Such a result would be inequitable and inconsistent with the requirements of the Bankruptcy Code.

     Accordingly, for the reasons stated herein, the Court sustains Creditor's Objection to Second Amended Plan.  Creditor shall be entitled to retain its lien as to Co-Debtor Daniel Schmidt's interest in the Vehicle post-discharge until such time as its claim is paid in full. Debtor is directed to amend her plan to so provide.

     A separate order shall enter.

ENTERED: October 29, 2024

                        /s/ Laura K. Grandy
                        **UNITED STATES BANKRUPTCY JUDGE**